IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CARMEN ACOSTA SANCHEZ,

Plaintiff,

v.

PUERTO RICO POLICE DEPARTMENT, et
als.,

Defendants.

CIVIL NO. 13-1947 (PAD)

## REPORT AND RECOMMENDATION

## INTRODUCTION

Plaintiff Carmen Acosta Sánchez ("Plaintiff") brings forth this case alleging a variety of violations to the law by her employer, the Puerto Rico Police Department ("PRPD") and two of its former Superintendents, Hector Pesquera ("Pesquera") and James Tuller ("Tuller"); Deborah M. Vega[1] ("Vega"), Human Resources Director for the PRPD and Juan Carlos Centeno ("Centeno"), a Special Aide (collectively "Defendants"). Plaintiff's main claim is that Defendants discriminated against her when she was appointed to, and then demoted from, the position of Acting Director for the Division of Psychology and Social Work because of her sex and age and replaced by a younger, male employee, co-Defendant Centeno.    Plaintiff asserts a violation of her rights under the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and the Equal Pay Act of 1963, as amended,

---

[1] The Court notes that, although the Department of Justice entered an appearance on behalf of co-Defendant Vega initially, when Attorney Joseph Feldstein withdrew from this case, new counsel for the Department of Justice did not assume the legal representation for this Defendant, only for the PRPD, Tuller, Centeno and Pesquera. (Docket No. 36). Although Department of Justice attorney Wandymar Burgos appears as counsel of record for co-Defendant Vega, no arguments were made for the dismissal of co-Defendant Vega's claims in Defendants' dispositive motion presented at Docket No. 76.   In fact, co-Defendant Vega's name is not even mentioned in the motion.   Therefore, the claims against co-Defendant Vega are not discussed in this Report and Recommendation.

and also brings several supplemental claims under Puerto Rico law.

Co-Defendants PRPD, Centeno, Tuller and Pesquera now move for summary disposition of all claims, for a variety of reasons that will be discussed in more detail below.   (Docket No. 76).   Naturally, Plaintiff posits that Defendants' motion should be denied.   (Docket No. 86).

On September 26, 2016, the presiding District Judge referred Defendants' dispositive motion to the undersigned for a Report and Recommendation. (Docket No. 94).   The District Judge also referred Defendants' "Motion to Strike Plaintiff's Opposing Statement of Material Facts." (Docket No. 92).

For the reasons explained below, it is recommended to the court to GRANT IN PART AND DENY IN PART Defendants' Motion for Summary Judgment, and to DENY the Motion to Strike, in order to have a more complete record.

## STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   Fed.R.Civ.P. 56 (c).   Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law."   <u>Vega-Rodríguez v. Puerto Rico Tel. Co.</u>, 110 F.3d 174, 178 (1st Cir. 1997).

_____

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. Id. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Id. At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

The First Circuit Court of Appeals has "emphasized the importance of local rules similar to Local Rule 56 [of the District of Puerto Rico]." Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007); see also, Colón v. Infotech Aerospace Servs., Inc., 869 F.Supp.2d 220, 225-226 (D.P.R. 2012). Rules such as Local Rule 56 "are designed to function as a means of 'focusing a district court's attention on what is -and what is not-genuinely controverted.' " Calvi v. Knox County, 470 F.3d 422, 427 (1st Cir. 2006)). Local Rule 56 imposes guidelines for both the movant and the party opposing summary judgment. A party moving for summary judgment must submit factual assertions in "a separate, short, and concise statement of material facts, set forth in numbered paragraphs." Loc. Rule 56(b). A party opposing a motion for summary judgment must

<u>Carmen Acosta Sánchez v. Puerto Rico Police Department, et al.</u>
Civil No. 13-1947 (PAD)
Report and Recommendation
Page  4
_____

"admit, deny, or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of facts." Loc. Rule 56 (c).    If they so wish, they may submit a separate statement of facts which they believe are in controversy.   Facts which are properly supported "shall be deemed admitted unless properly controverted." Loc. Rule 56(e); <u>P.R. Am. Ins. Co. v. Rivera-Vázquez</u>, 603 F.3d 125, 130 (1st Cir. 2010) and <u>Colón</u>, 869 F.Supp.2d at 226.   Due to the importance of this function to the summary judgment process, "litigants ignore [those rules] at their peril."   <u>Hernández</u>, 486 F.3d at 7.

**FINDINGS OF FACT**

Based on parties' filings, the Court finds the uncontested facts in this case to be as follows:

1. Carmen Acosta occupied the career position of Psychologist II at the Division of Psychology and Social Work of the PRPD. D. Exhibit 3.

2. On December 29, 2010, Plaintiff Acosta was appointed on an interim basis to perform the functions of Acting Director of the Division of Psychology and Social Work at the PRPD.   D Exhibit 1.

3. Her interim designation was effective as of January 3, 2011.   D. Exhibits 1 & 2.

4. Plaintiff complied with all the requirements of the Director position as described in the job description, which is described therein as a career position.   P Exhibit 1; P. Exhibit 3, p. 51, l. 3-9; P. Exhibit 2, p. 48, l. 17-21.

_____

5. The Directorship did not require a Ph.D. P. Exhibit 1.

6. Puerto Rico law allows for the award of a differential salary after occupying an interim position for 30 days.   It also allows for another differential after occupying the interim position for a year and being reinstated to the occupant's former career position.   Plaintiff was not awarded either of these differentials.   P.R. Laws Ann. tit. 3, § 1464a; P. Exhibit 3, p. 23, l. 23-34, p. 26, l. 1-23; p. 27, l. 8-15; p. 36, l. 7-23.

7. Plaintiff Acosta holds a Ph.D. from Ashwood University, an online university. D. Exhibit 7.

8. Plaintiff obtained a Ph.D. degree in her own initiative and never requested a salary increase. P. Exhibit 2, p. 53, l. 19-24; p. 54, l. 1- 24.

9. Plaintiff never displayed her diploma at her office and when she showed her degree to the PRPD Human Resources Office in 2007, it was never questioned.   P. Exhibit 2, p. 69, l. 1-14.

10. The Code of Ethics for Psychologists of Puerto Rico which was current while Plaintiff was Acting Director held, under its second principle referred to as "Competency," that psychologists must present "as evidence of qualification to practice only those degrees in the field of psychology obtained at accredited institutions under the regulations of the Council of Higher Education of Puerto Rico and other entities with equal academic or professional hierarchy according to Law 96 of 1983".   D. Exhibit 8.

11. Plaintiff acknowledged that Ashwood University is not an institution accredited by the Counsel for Higher Education of Puerto Rico. D. Exhibit 7, p. 2, l. 16.

12. In spite of this, Plaintiff was named to the interim Directorship.   D. Exhibit 1.

13. There are several internet sites and related articles which state that Ashwood University is a "rip off" and classify it as a "diploma mill", "fake self-serving accreditation", "unaccredited, fake, scam, fraud diploma mill", among others.   D. Exhibits 9 & 10.

14. Plaintiff holds a valid professional license issued by the Psychologist Examining Board that has never been revoked or suspended.   P. Exhibit 5.

15. Among the duties and responsibilities that Plaintiff Carmen Acosta had during her appointment as Acting Director of the Division of Psychology and Social Work at the Puerto Rico Police Department was to implement the Superintendent's public policy.   D. Exhibit 14, p. 26, l. 7 – 12.

16. Prior to relocating Plaintiff from her interim position, Defendant PRPD conducted an investigation as to the validity of the Ph.D. degree Plaintiff held.   D. Exhibits 5 & 6.

17. In June 2012, while Plaintiff Acosta still held the position of Acting Director of the Psychology and Social Work Division, attorney Luis Santos, Assistant Superintendent of Management Services, and Margarita de Gracia, Human

Resources Manager, asked Plaintiff for information regarding her doctorate studies.   D. Exhibit 14, p. 49, l. 4-10.

18. During Plaintiff's interim tenure as Acting Capacity Director, she used the title "Doctor" and signed documents utilizing said title, but did not use the title when signing psychological reports or psychological evaluations   D. Exhibit 7, p. 3, l. 17-18; D. Exhibit 14, p. 67. l. 9- 15; p. 68, l. 4-15; P. Exhibit 2, P. 80, l. 1-15.

19. Plaintiff offered to stop using her Ph.D. title on administrative documents if it was a problem.   Id.

20. On September 7, 2012, Plaintiff Acosta received a letter signed by the Superintendent of the PRPD which indicated that she would be relocated to the Reform and Enforcement Office.   D. Exhibit 4.

21. The letter did not express a reason for the transfer. P. Exhibit 2, p. 46, l. 3-5; p. 50, l. 22-24; p. 51, l. 4.

22. This change did not affect her salary or her condition as Psychologist II in the career service.   D. Exhibit 4.

23. Before Plaintiff was relieved of her temporary interim position, she specifically requested the Human Resources Manager at the time that she not be reinstated to her previous position at the Psychology and Social Work Division. Taking said request into consideration, she was relocated to the Reform and Compliance Office of the PRPD.   D. Exhibit 6, ¶ 6.

24. The Reform and Enforcement Office is ascribed to the Superintendent's office at the PRPD.  D. Exhibit 14, p. 41, l. 21 – 23.

25. The Reform and Enforcement Office at the PRPD oversees the compliance and implementation of an agreement that was signed between the United States Department of Justice and the Commonwealth of Puerto Rico to carry out certain reforms within the PRPD.  D. Exhibit 14, p. 41, l. 15-20.

26. Said reforms are divided into eleven (11) areas of compliance.   D. Exhibit 14, p. 42, l. 21-25.

27. Plaintiff Acosta is in charge of supervising the compliance area of System Efficiencies and Managerial Procedures.   She did not perform her previous functions as Psychologist II at this office. D. Exhibit 14, p. 42, l. 4-9;   P. Exhibit 2, p. 41, l. 24; p. 42, l. 1-2; p. 73, l. 22-24; p.74, l. 1-7.

28. The section of System Efficiencies and Managerial Procedures which Plaintiff Acosta supervises oversees trainings to the police staff, administrative complaints from citizens, recruitment, and supervision and administration.   D. Exhibit 14, p. 43, l. 5-9.

29. This includes the "improvement of process[es]" to bring them up to par with the requirements of the PRPD reform.   D. Exhibit 14, p. 42, l. 11-13.

30. Plaintiff Acosta possesses a master's degree in Industrial Organization Psychology.   D. Exhibit 14, p. 11, l. 12-13.

31. An Industrial Organizational Psychologist is focused on the development of

organizations. "That includes recruiting, personnel evaluation, motivating the staff, evaluation system for the staff, training…All that has to do with the organization at work."   D. Exhibit 14, p. 11, l. 15-20.

32. Co-Defendant Centeno works in the PRPD as a Special Aide II, a trust position. D. Exhibit 11, answer 2 (c), p. 3.

33. Among the duties assigned currently assigned to co-Defendant Centeno are those of Interim Director of the Psychology and Social Work Division. D. Exhibit 11, answer 2 (c), p. 3.

34. Centeno receives a higher pay than Plaintiff.   P. Exhibit 7 and P. Exhibit 8.

35. Centeno's job description as Special Aide II is different than Acosta's Job Description as Psychologist II.   D. Exhibit 12.

36. Among others, as Special Aide II, Centeno has the responsibility to counsel the PRPD superintendent in matters relating with formulation and implementation of the PRPD's public policy.   D. Exhibit 12, ¶ 2.

37. While Plaintiff Acosta was Acting Director, co-Defendant Centeno was her subordinate within the Division of Psychology and Social Work.   She supervised him.   D. Exhibit 12; D. Exhibit 14, p. 28, l. 8-12.

38. Centeno had no authority to relocate or order the transfer of a superior of his. He also had no authority to provide reinstatement, back pay, and salary increases.   D. Exhibit 12.

39. Centeno has no personal knowledge as to why Plaintiff was transferred to

<u>Carmen Acosta Sánchez v. Puerto Rico Police Department, et al.</u>
Civil No. 13-1947 (PAD)
Report and Recommendation
Page 10
_____

the Reform and Enforcement Office and had no role in her relocation. D.
Exhibit 12.

40.  Plaintiff Acosta describes her relationship with co-Defendant Centeno as
"[e]xcellent and cordial, strictly related to professional work."   D. Exhibit
14, p. 28, l. 8-12.

41. During the time in which Plaintiff Acosta was Acting Director, co-Defendant
Centeno never made a pejorative or rude comment regarding her age or sex.
D. Exhibit 14, p. 28, l. 13 – 25; p. 29, l. 1-7.

42. Co-Defendant Tuller has no knowledge regarding the allegations in the
Complaint.   D. Exhibit 13, Answer 9, p. 6.

43.  Tuller assumed the position of Acting Superintendent of the Puerto Rico
Police Department on December 1, 2013, after the events alleged in the
Complaint took place. D. Exhibit 13, Answer 9, p. 6.

44.  Tuller had no role in Plaintiff's relocation. D. Exhibit 13, Answer 9, p. 6.

45.  Tuller never, verbally or in writing, communicate with Plaintiff. D. Exhibit
13, Answer 9, p. 6.

46. Tuller never referred to Plaintiff Acosta's age in a disrespectful or negative
way.   D. Exhibit 14, p. 66; l. 23-25.

47. Tuller never referred to Plaintiff Acosta's gender in a disrespectful or
negative way.   D. Exhibit 14, p. 67, l. 1-4.

48.  Tuller never physically or verbally harassed or demeaned Plaintiff. D.

<u>Carmen Acosta Sánchez v. Puerto Rico Police Department, et al.</u>
Civil No. 13-1947 (PAD)
Report and Recommendation
Page 11
_____

Exhibit 14, p. 76, l. 5-8.

49. Tuller is currently retired. D. Exhibit 13, Answer 1. b., p. 3.

50. Co-Defendant Pesquera never referred to Plaintiff's age or sex in a disrespectful or negative way. D. Exhibit 14, p. 63, l. 12-18.

51. Pesquera never physically harassed Plaintiff. D. Exhibit 14, p. 63, l. 19-20.

52. Pesquera never verbally harassed or demeaned Plaintiff. D. Exhibit 14, p. 63, l. 21-22.

## LEGAL ANALYSIS

### A.  Eleventh Amendment Immunity.

Defendants claim that Eleventh Amendment immunity bars the claims brought against them.   While in theory Defendants are correct, this statutory bar has its exceptions which are applicable here.

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI.   The Eleventh Amendment bars suits from being brought in federal courts for monetary damages against states, unless the state waives its immunity or consents to being sued.   As will be explained more fully below, it also bars suits for monetary relief, in certain cases, against the agencies or instrumentalities of a state and against its officers acting in their official capacities. <u>Kentucky v. Graham</u>, 473 U.S. 159, 105 S.Ct. 3099 (1985); <u>Culebras Enter. Corp. v. Rivera</u>

_____

Ríos, 813 F.2d 506 (1st Cir. 1987).   Furthermore, since a State only exists through its

instrumentalities, Eleventh Amendment immunity also extends to arms or "alter egos" of

the State.   Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S.Ct. 568

(1977); Ainsworth Aristocrat Int'l Pty. Ltd. v. Tourism Co. of Puerto Rico, 818 F.2d 1034

(1st Cir. 1987).

     Yet, exceptions have been made over the years to permit certain lawsuits.   In 1972,

Congress amended the Civil Rights Act of 1964 to allow for the prosecution of private

rights of action for discrimination against states, but limited to equitable remedies. In

1991, Congress added additional relief for compensatory damages.   See Civil Rights Act

of 1991, Pub.L. No. 102-166, 105 Stat. 1071, 1072 (1991) (codified in 42 U.S.C. §

1981a(a)(1)).   In line with this Congressional mandate, it has been found that Congress

has expressly waived the immunity of the State in cases under Title VII where a state

government is sued for certain actions of employment discrimination.   See Espinal-

Domínguez v. Commonwealth of Puerto Rico, 352 F.3d 490 (1st Cir. 2003); Fitzpatrick v.

Bitzer, 427 U.S. 445, 96 S.Ct. 2666 (1976) (concluding that Title VII's authorization of

federal-court jurisdiction to award money damages against a state government to

individuals subjected to employment discrimination does not violate the Eleventh

Amendment since Congress was exercising its § 5 remedial powers).

     This issue has been long discussed, and this Court rather consistently has

interpreted governing Supreme Court precedent to allow plaintiffs to sue state

governments in federal court under Title VII. See e.g., Maldonado-González v. Puerto

_____

Rico Police, 927 F.Supp.2d 1 (D.P.R. 2013); Rey-Cruz v. Forensic Scien. Inst., 794 F.Supp.2d 329 (D.P.R. 2011).   Furthermore, in 2003, the Supreme Court affirmed its position regarding Title VII's abrogation of state sovereign immunity in cases of gender discrimination.   See Nevada Dept. of Human Res. v. Hibbs, 538 U.S. 721, 730-31, 123 S.Ct. 1972 (2003) (*citing* Fitzpatrick, 427 U.S. 445, 96 S.Ct. 2666).

Therefore, it is clear that Title VII abrogated the state's sovereign immunity, and as such, Plaintiff Acosta's Title VII action against the PRPD, an instrumentality of the state, is not barred by the Eleventh Amendment.[2]

Pursuant to the aforementioned analysis, it is recommended to the Court that Defendants' request to dismiss Plaintiff's Title VII claim against the PRPD under Eleventh Amendment immunity be DENIED.

### B.  Equal Pay Act.

The Equal Pay Act, prohibits wage discrimination "between employees on the basis of sex ... for equal work on jobs that performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1);   Byrd v. Ronayne, 61 F.3d 1026, 1033 (1st Cir. 1995).   An Equal Pay Act plaintiff must make a *prima facie* showing that the employer paid different wages to an employee of the opposite sex for substantially equal work. Id.; see also Tormos-Pol v.

_____

[2]  The Puerto Rico Police Department, Security Commission, and Central Office of Labor Advice and Human Resources Administration are government agencies, instrumentalities, or "arms of the state..." López Rosario v. Police Dep't, 126 F. Supp. 2d 167 (D.P.R. 2000); *see also*, Cestero v. Rosa, 996 F.Supp. 133, 142-43 (D.P.R.1998) and Sánchez Ramos v. Puerto Rico Police Dept., 392 F.Supp.2d 167, 177 (D.P.R. 2005).

Conte-Miller, Civ. No. 10-193, 2011 WL 6055340, at *5 (D.P.R. Nov. 30, 2011).

Defendants argue that Plaintiff has failed to establish that she was in a similar situation to Centeno, and, while admitting they were paid different wages, justify their actions stating that "Plaintiff is a career employee and Centeno is a trust employee, and they are paid pursuant to the pay scales of those employees categories in the PRPD". (Docket No. 76, p. 14).   Yet, Defendants cite no case law or Puerto Rico statute to stand for this proposition.

In spite of Defendants' assertions to the contrary, it seems that both Plaintiff and Centeno were occupying the same position.   Defendants, unfortunately, have shown some confusion as to this issue, and have not put the Court in a position to rule in their favor.   The Court sought clarification of this issue and requested additional information from the parties, but the materials submitted by Defendants in response to the Court's inquiry shed little light on this matter (Docket No. 102).   In Defendants' submission, they first state that Centeno performs the duties of Interim Director of the Division of Psychology and Social Work, yet in the next sentence they say he has not been appointed Director of that same office in an Acting or interim capacity.   (Docket No. 104).   Plaintiff on the other hand proffers that Centeno has, in fact, been appointed to the position, and brings forth an official certification so stating from the PRPD itself. (D. Exhibit 7).

Hence, Plaintiff has raised a genuine issue of fact as to whether Centeno is performing the duties on an interim basis or has been properly appointed to the position. Either way, it is undisputed that Plaintiff occupied the interim Directorship for the

_____

required time to be eligible to receive two differentials which were never given to her, while co-Defendant Centeno apparently was paid more.

Clearly, these are issues of material fact that prevent summary disposition of this claim and are only proper for a jury to resolve.  At trial, Defendants will have to explain whether or not Centeno does, in fact, occupy the Directorship position and in what capacity, the difference in salary between two people who appear to have performed the same duties and the reason why Plaintiff was not given a differential during the term she occupied the position in question nor when she was reinstated to her career position, as required by law.

For these reasons, it is recommended to the Court that Defendants' petition to dismiss the Equal Pay claims be DENIED.

### C.  Title VII *prima facie* case and ADEA.

The ADEA states that "[i]t shall be unlawful for an employer … to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age [.]" 29 U.S.C. § 623(a)(1). Under the ADEA, an employer will only be liable if age was the reason the employer took the adverse action. Gross v. FBL Financial Services, 557 U.S. 167, 129 S.Ct. 2343 (2009).  Title VII, on the other hand, makes it an unlawful employment practice for an employer to discriminate against any individual because of such individual's sex, among other protected classes. 42 U.S.C. § 2000e-2 (a)(1).

Carmen Acosta Sánchez v. Puerto Rico Police Department, et al.
Civil No. 13-1947 (PAD)
Report and Recommendation
Page 16
_____

Because Plaintiff has presented no direct evidence of gender discrimination, the present claim is therefore analyzed under the burden shifting scheme set out by the United States Supreme Court in the landmark case of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973).   In order to set up a case, a plaintiff must first establish a *prima facie* case of discrimination.   Kosereis v. Rhode Island, 331 F.3d 207, 212 (1st Cir. 2003).   The elements of the *prima facie* case vary according to the nature of the plaintiff's claim, but for both Title VII and ADEA, she must show that she suffered an adverse employment action. García v. Bristol-Myers Squibb Co., 535 F.3d 23, 31 (1st Cir. 2008); Rodríguez-Torres v. Gov't Dev. Bank of Puerto Rico, 704 F. Supp. 2d 81, 94 (D.P.R. 2010).

In the instant case, the Court finds issues of fact as to the adverse employment action.   Defendants have established that Plaintiff was occupying the interim Directorship of a division, which by its very name, is a temporary assignment, and therefore carried with it no expectation of continuity under the law.   Yet, it is also uncontested that Plaintiff was paid less than co-Defendant Centeno, a younger male, for what appears to be the same position.   While Defendants posit that the difference in pay between Centeno and Plaintiff was due to the fact that one occupied a career position and another a trust position, as stated above, no evidence has been presented by Defendants to support this conclusion.

Compounding this problem is the fact that, as discussed above, interim appointments carry a differential after occupying the position for 30 days, and later, for

_____

occupying it over a year upon reinstatement, neither of which Plaintiff was awarded.   The

question to be asked then is whether removal from an interim position can be considered

an adverse employment action when the person removed was paid less than his successor.

Making all favorable inferences in Plaintiff's favor, as the Court must do at this stage, the

Court tends to think that it would, and thus finds that Plaintiff has raised a genuine factual

issues regarding this matter.   Whether the fact that Plaintiff was not given the

differentials pursuant to the law constitutes an "adverse employment action" will be up

to the jury to assess.

 Assuming however *arguendo*, that Plaintiff did, in fact meet her *prima facie*

burden of establishing her case, the Court would still be unable to grant summary

judgment for Defendants.   Under Title VII, once the plaintiff establishes a *prima facie*

case, the burden of production—but not the burden of persuasion—shifts to the employer,

who must articulate a legitimate, non-discriminatory reason for the adverse employment

action.   If the employer does so, the focus shifts back to the plaintiff, who must then

show, by a preponderance of the evidence, that the employer's articulated reason for the

adverse employment action is pretextual and that the true reason for the adverse action

is discriminatory.   Smith v. Stratus Computer, 40 F.3d 11, 16 (1st Cir. 1994); Lockridge v.

The Univ. of Maine Sys., 597 F.3d 464, 470 (1st Cir. 2010).

 Defendants assert that they have a legitimate, non-discriminatory reason for

removing Plaintiff from her interim Directorship appointment, to wit, that Plaintiff "did

not possess a valid Ph.D. from an institution accredited by the Counsel for Higher

_____

Education of Puerto Rico, but she was signing as such during her incumbency as Acting Director of the Psychology and Social Work Division of the PRPD". (Docket No. 76, p. 12). For purposes of this summary judgment analysis then, the question becomes whether Plaintiff has identified evidence that would enable a reasonable jury to find that Defendants' proffered reason is pretextual and that Plaintiff was in fact removed from her interim position because she was a woman and because of her age.

Unfortunately for Defendants, Plaintiff has brought forth competent evidence showing that a Ph.D. was not a requirement for her to occupy the Directorship position, to wit, the job description.   As a result of the investigation conducted by Defendants regarding this issue, they aver that Plaintiff received the degree in question from Ashwood University which is allegedly a "diploma mill" and was not accredited by the Counsel for Higher Education.   The problem with Defendants' reasoning is that Plaintiff offered to cease signing with the Ph.D. title conferred by such institution, and was still removed from her position.   Thus, Plaintiff was still removed from her position in spite of having resolved the alleged problem proffered by Defendants and further, has demonstrated that she was qualified to occupy said position without the Ph.D.   This, coupled with the fact that Plaintiff was replaced by a younger male who was paid more, tends to render Defendants' proffered reason for her removal suspect, and in turn, also creates a genuine issue of fact that is proper only for a jury to resolve at trial.

For all the above reasons, there are genuine issues of material fact that prevent summary disposition of the Title VII and ADEA claims.   As such, it is recommended that

_____

the dismissal of the Title VII and ADEA claims against the PRPD be DENIED.

### D. Individual Liability under Title VII and ADEA.

The Court gives short shrift to the analysis of these claims, since the parties are in agreement.   Under Title VII, Defendants posit that individual liability cannot attach under Title VII and ADEA as to the claims brought forth against them, because liability under this statute only applies against the employer, the PRPD.   They are correct and Plaintiff so concedes.   Instead, Plaintiff argues that Defendants are liable under state law claims.

It is well-settled in this Circuit that Title VII does not apply to defendants in their individual capacity.   Rey-Cruz, 794 F.Supp.2d at 329; Maldonado-González v. Puerto Rico Police, 927 F. Supp. 2d 1, 9 (D.P.R. 2013) (*citing to* Fantini v. Salem State Coll., 557 F.3d 22, 30 (1st Cir. 2009) (no individual liability under Title VII, for liability rests with the employer).   The same applies to ADEA claims.   Rivera-Tirado v. Autoridad de Energía Eléctrica, 663 F.Supp.2d 36, 40-41 (D.P.R.2009); *see also* Fantini, 557 F.3d at 28-32 (finding no individual liability under Title VII of the Civil Rights Act of 1964 and noting the similarity between relevant statutory language of Title VII and the ADEA).   No liability can thus be attributed to the individual Defendants.

As such, it is recommended to the Court that the petition for dismissal as to Plaintiff's Title VII and ADEA causes of action against individual Defendants Centeno, Tuller and Pesquera be GRANTED.

<u>Carmen Acosta Sánchez v. Puerto Rico Police Department, et al.</u>
Civil No. 13-1947 (PAD)
Report and Recommendation
Page  20
_____

### E.  Individual Liability under Law 100.

Regarding Plaintiff's claims under Law 100, the Puerto Rico Supreme Court held in <u>Rosario Toledo v. Distribuidora Kikuet, Inc.</u>, 2000 TSPR 107, that under Law 100, the employer is liable for the acts of his or her agents, officials, administrators, and supervisors, and the word "employer" expressly includes the employer's agents, officials, administrators and supervisors.   Therefore, Plaintiff's discrimination claims against the individual Defendants under Puerto Rico law can proceed.

In essence, Plaintiff posits that the three individual Defendants can be found liable for her relocation, reinstatement or for the failure to set her compensation at the appropriate rate.

<u>Co-Defendant Centeno</u>.    It is evident that Centeno, as Plaintiff's subordinate when she was occupying the interim Directorship, plainly had no involvement regarding her relocation or her pay increase requests.   These are the only allegations against co-Defendant Centeno, insofar as he cannot be personally liable under Title VII, and was not responsible for Plaintiff's relocation or her pay issues.   No other allegations have been brought against him.   Therefore, it is recommended that Centeno's request to dismiss claims against him under Law 100 be GRANTED.

<u>Co-Defendant Tuller</u>.    Regarding co-Defendant Tuller, besides the usual standard recitations contained in the Complaint, Plaintiff presents without citing any supporting case law, the following argument in her opposition to the request for dismissal:

"Tuller until just recently was the Police Superintendent, thus the Nominating

Carmen Acosta Sánchez v. Puerto Rico Police Department, et al.
Civil No. 13-1947 (PAD)
Report and Recommendation
Page 21
_____

Authority, with full power to set Plaintiff's compensation and grant Plaintiff relief. While Tuller occupied that position all Plaintiff's requests for an increase in her compensation fell in deaf ears, thus making Mrs. Acosta's damages more palpable and discriminatory in nature, further aggravating Plaintiff's position and harm. Tuller failed to reinstate Plaintiff to her position thus causing harm with his inaction."   Docket No. 86, p. 17.

This is the extent of Plaintiff's claims against Tuller; that because he was the top public servant in charge of that agency, he is responsible for the actions taken against her. To begin with, Tuller assumed the position of Acting Superintendent of the Puerto Rico Police Department on December 1, 2013, which was after the events alleged in the Complaint took place. Co-Defendant Tuller had no role in Plaintiff's removal and subsequent relocation, and never, verbally or in writing, communicated with Plaintiff regarding her age or gender.   Plaintiff has admitted these facts.   Thus, the Court finds that Tuller's actions – or rather, inaction – some time after the events which gave rise to this cause of action occurred, is simply too removed from the facts.   Defendants have not even brought forth evidence that Tuller was somehow aware of Plaintiff's claims.

In sum, the Court finds that Plaintiff has done little more than rest on the inadequate allegations of her pleadings, contrary to the requirements of Fed.R.Civ.P. 56(e): "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.   Plaintiff has not done so.

_____

Accordingly, it is recommended that Co-Defendant Tuller's request for dismissal of the claims filed against them under Law 100 be GRANTED.

<u>Pesquera</u>.   The same argument that applies to co-Defendant Tuller applies to Pesquera, as he never referred to Plaintiff's age or gender in a disrespectful or negative way.   However, it is Defendants who have now failed to flesh out their argument, reciting simply two bare bones sentences in support of their petition for dismissal.   This failure to address the claims of Pesquera in itself is enough to DENY the dismissal of the claims against him.   <u>United States v. Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

Unfortunately for Defendants, the Court also finds another reason to recommend denial of dismissal of the claims brought against Pesquera, to wit, he signed the letter that removed Plaintiff from the interim Directorship.   At this stage, and making all inferences in favor of Plaintiff, a reasonable jury could find that his actions carried discriminatory intent, even if Pesquera did not verbally articulate discrimination against Plaintiff directly.

Accordingly, it is recommended that co-Defendant Pequera's request for dismissal of the claims filed against him under Law 100 be DENIED.

**F.  Supplemental Claims under State Law.**

When federal claims are dismissed before trial, state claims should be dismissed as well, but such is not a mandatory rule to be applied inflexibly in all cases.   Rather, the

court should exercise informed discretion when deciding to assert supplemental jurisdiction over state law claims.   Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614 (1988); Rosado v. Wyman, 397 U.S. 397, 403-05, 90 S.Ct. 1207 (1970); Roche v. John Hancock Mutual Life Ins. Co., 81 F.3d 249, 256-57 (1st Cir. 1996).

The only state law claims that remain alive are the discrimination claims under Law 100 against co-Defendant Pesquera.   In accordance with above discussion and recommendations, there are no grounds to decline jurisdiction as to the discrimination claims at this stage for co-Defendant Pesquera.   Yet, Plaintiff has also filed an Article 1802 claim for damages under P.R. Laws Ann. tit. 31, §5141.

It has been well established that "to the extent that a specific labor law covers the conduct for which a plaintiff seeks damages, he is barred from using that same conduct to also bring a claim under Article 1802."   Rosario v. McConnell Valdés, 2008 WL 509204, *2 (D.P.R. 2008); see also Santini Rivera v. Serv. Air, Inc., 137 P.R. Dec. 1 (1994). Thus, an Article 1802 claim "may only be brought by the employee-plaintiff if it is based on tortious or negligent conduct distinct from that covered by the specific labor law(s) invoked," in this case, discrimination. Id. Because Plaintiff does not aver any other tortious conduct aside from the alleged discrimination, and which are already addressed under federal and local laws, Plaintiff's claims under Article 1802 cannot lie and should be dismissed.

Therefore, it is recommended to the Court that the petition to dismiss the 1802 claims against all the co-Defendants be GRANTED.

<u>Carmen Acosta Sánchez v. Puerto Rico Police Department, et al.</u>
Civil No. 13-1947 (PAD)
Report and Recommendation
Page 24
_____

## CONCLUSION

For the aforementioned reasons, it is recommended to the Court to GRANT IN PART AND DENY IN PART Defendant's Motion for Summary Judgment (Docket No. 76), as follows:

    a.  DENIED as to Eleventh Amendment immunity under Title VII;

    b.  DENIED as to the Equal Pay Act claims;

    c.  DENIED as to liability of the PRPD under Title VII and ADEA claims;

    d.  GRANTED as to liability of individual co-Defendants Centeno, Tuller and Pesquera under Title VII and ADEA;

    e.  GRANTED as to discrimination claims against co-Defendants Centeno and Tuller under Puerto Rico Law 100;

    f.  DENIED as to discrimination claims against co-Defendant Pesquera under Puerto Rico Law 100;

    g.  GRANTED as to all Article 1802 claims against all co-Defendants.

Finally, it is recommended that Defendants' "Motion to Strike Plaintiff's Opposing Statement of Material Facts" (Docket No. 92) be DENIED.

IT IS SO RECOMMENDED.

The parties have fourteen (14) days to file any objections to this report and recommendation. <u>See</u> Amended Local Rules. Failure to file same within the specified time waives the right to appeal this order. <u>Henley Drilling Co. v. McGee</u>, 36 F.3d 143, 150-151 (1st Cir. 1994); <u>United States v. Valencia</u>, 792 F.2d 4 (1st Cir. 1986) and <u>Paterson-</u>

_____

Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988).

In San Juan, Puerto Rico, on this 3rd day of November of 2016.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ RIVE
UNITED STATES MAGISTRATE JUDGE